No. 12-3525

UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

vs.

CURTIS JOHNS,
Defendant-Appellant.

Appeal From the United States District Court
For the Northern District of Illinois, Eastern Division
Case No. 1:11-cr-00468-1
The Honorable Judge Ronald A. Guzman

# BRIEF AND REQUIRED SHORT APPENDIX OF DEFENDANT-APPELLANT CURTIS JOHNS

FEDERAL PUBLIC DEFENDER
CENTRAL DISTRICT OF ILLINOIS
600 E. Adams St., 2nd Floor
Springfield, Illinois 62701
Telephone: (217) 492-5070
Fax: (217) 492-5077
Email: daniel_hansmeier@fd.org

JONATHAN E. HAWLEY
Chief Federal Public Defender

DANIEL T. HANSMEIER
Staff Attorney/Branch Deputy

Attorneys for Defendant-Appellant,
CURTIS JOHNS

**ORAL ARGUMENT REQUESTED**

## CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 12-3525

Short Caption: U.S. v. Johns

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement stating the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1

The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

**[ ] PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1) The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P 26.1 by completing item #3):
Curtis Johns

(2) The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Jonathan E. Hawley and Daniel T. Hansmeier of the Federal Public Defender's Office for the Central District of Illinois on appeal; and Cynthia Giacchetti and Francis Ostian, both of Chicago, Illinois, in the district court.

(3) If the party or amicus is a corporation: N/A

i) Identify all its parent corporations, if any; and

__N/A__________

ii) list any publicly held company that owns 10% or more of the party's or amicus' stock:
__N/A/__________

==========================================================

Attorney's Signature: s/Daniel T. Hansmeier Date: 5 /16/2013

Attorney's Printed Name: Daniel T. Hansmeier

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d). **Yes** _X_ **No** __

Address: 600 East Adams Street, 2nd Floor, Springfield, IL 62701

Phone Number: 217-492-5070

Fax Number: 217-492-5077

E-Mail Address: daniel_hansmeier@fd.org

**TABLE OF CONTENTS**

**PAGE**

CIRCUIT RULE 26.1 DISCLOSURE STATEMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . vi
CASES.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . vi
STATUTES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ix
OTHER AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ix

JURISDICTIONAL STATEMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ISSUES PRESENTED FOR REVIEW. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

I. Whether the district court erred when it imposed a 4-level other-felony-offense enhancement (USSG § 2K2.1(b)(6)(B)) because: (1) Application Note 13(D) to USSG § 2K2.1 precludes the enhancement under the particular facts of this case; and (2) the district court's findings were insufficient to support the enhancement?

II. Whether the district court committed reversible error when it imposed an above-Guidelines-range sentence based on clearly erroneous facts, in violation of the Due Process Clause of the United States Constitution?

III. Whether the district court's violation of Federal Rule of Criminal Procedure 32(i)(1)(A) amounts to reversible error?

IV. Whether the district court's explanation for the 160-month sentence was not sufficiently compelling to support the significant upward variance?

V. Assuming no error by itself requires remand, whether remand for resentencing is required by the cumulative error doctrine?

STATEMENT OF THE CASE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

STATEMENT OF FACTS.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
A. The Indictment. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
B. The Guilty Plea. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
C. The PSR.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

D. The Sentencing Memoranda. . . . . 8
E. The Sentencing Hearing. . . . . 12

SUMMARY OF ARGUMENT. . . . . 18

ARGUMENT. . . . . 21

Standards of Review. . . . . 21

I. The district court erred when it imposed the other-felony-offense enhancement because: (1) Application Note 13(D) precludes its application in this case; and (2) the district court's findings were insufficient to support the enhancement. . . . . 21
1. Application Note 13(D) to USSG § 2K2.1 precludes the other-felony-offense enhancement under the particular facts of this case. . . . . 22
2. Alternatively, the district court's factual findings were insufficient to support the enhancement.. . . . . 27

II. The district court committed reversible error because it imposed a significant upward variance based on clearly erroneous facts, in violation of the Due Process Clause of the United States Constitution.. . . . . 28
1. The district court's findings were inaccurate.. . . . . 29
a. Johns did not sell the CI a "semiautomatic handgun." . . . . 29
b. Johns did not have "eight biological children from six relationships.". . . 30
2. The district court relied on this inaccurate information when it imposed a significant upward variance in this case. . . . . 31
3. The district court's reliance on inaccurate information was reversible error.. 32

III. The district court's violation of Federal Rule of Criminal Procedure 32(i)(1)(A) also amounts to reversible error in this case.. . . . . 38

IV. The district court's explanation for the 160-month sentence was not sufficiently compelling to support the significant upward variance.. . . . . 43

V. Assuming no error by itself requires remand, remand for resentencing is required by the cumulative error doctrine. ... . . . . 56

CONCLUSION. . . . . 58

CERTIFICATE OF COMPLIANCE WITH FED.R.APP.P. 32(a)(7)(C).. . . . . . . . . . . . . . . . . 59

APPENDIX.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . App. i

CERTIFICATE OF COMPLIANCE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . App. ii

APPENDIX TABLE OF CONTENTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . App. iii

## TABLE OF AUTHORITIES

**PAGE**

## CASES

*Cone v. Bell*, 556 U.S. 449 (2009). . . . . . . . . . 56

*Connecticut Nat. Bank v. Germain*, 503 U.S. 249 (1992). . . . . . . . . . 25

*Credit Suisse Sec. LLC v. Simmonds*, 132 S.Ct. 1414 (2012) . . . . . . . . . . 26

*Fox v. Hayes*, 600 F.3d 819 (7th Cir. 2010). . . . . . . . . . 46

*Gall v. United States*, 552 U.S. 38 (2007).. . . . . . . . . . 28, 43

*Kasten v. Saint-Gobain Performance Plastics Corp.*, 131 S.Ct. 1325 (2011). . . . . . . . . . 25

*Lockett v. Trammel*, 711 F.3d 1218 (10th Cir. 2013).. . . . . . . . . . 56

*Palka v. City of Chicago*, 662 F.3d 428 (7th Cir. 2011). . . . . . . . . . 45

*Skinner v. Oklahoma*, 316 U.S. 535 (1942).. . . . . . . . . . 48

*Sosa v. Alvarez–Machain*, 542 U.S. 692 (2004). . . . . . . . . . 26

*Townsend v. Burke*, 334 U.S. 736 (1948). . . . . . . . . . 32, 33, 37

*United States v. Aljabari*, 626 F.3d 940 (7th Cir. 2010). . . . . . . . . . 21, 43

*United States v. Allen*, 269 F.3d 842 (7th Cir. 2001). . . . . . . . . . 56

*United States v. Atkinson*, 979 F.2d 1219 (7th Cir. 1992). . . . . . . . . . 42

*United States v. Barnes*, 602 F.3d 790 (7th Cir. 2010). . . . . . . . . . 35

*United States v. Bradley*, 628 F.3d 394 (7th Cir. 2010). . . . . . . . . . 45, 49, 50, 52

*United States v. Bradley*, 675 F.3d 1021 (7th Cir. 2012). . . . . . . . . . 45, 46, 53, 55

*United States v. Castillo*, 695 F.3d 672 (7th Cir. 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43, 44

*United States v. Castro-Juarez*, 425 F.3d 430 (7th Cir. 2005).. . . . . . . . . . . . . . . . . . . . . . . . . . . 35

*United States v. Coke*, 404 F.3d 836 (2d Cir. 1968). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47

*United States v. Corona-Gonza*, 628 F.3d 336 (7th Cir. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . 35

*United States v. Cossey*, 632 F.3d 82 (2d Cir. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35, 36

*United States v. Durham*, 645 F.3d 883 (7th Cir. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

*United States v. ex rel. Welch v. Lane*, 738 F.2d 863 (7th Cir. 1984). . . . . . . . . . . . . . . . 28, 33, 37

*United States v. Gear*, 418 Fed.Appx. 488 (7th Cir. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . 35, 36

*United States v. Gonzalez-Castillo*, 562 F.3d 80 (1st Cir. 2009).. . . . . . . . . . . . . . . . . . . . . . . . . 36

*United States v. Halliday*, 672 F.3d 462 (7th Cir. 2012).. . . . . . . . . . . . . . . . . . . . . . . . . . . . 35, 36

*United States v. Harris*, 558 F.2d 366 (7th Cir. 1977). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

*United States v. Higdon*, 531 F.3d 561 (7th Cir. 2008).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 57

*United States v. Jimenez-Laines*, 354 Fed.Appx. 889 (5th Cir. 2011). . . . . . . . . . . . . . . . . . . . 56

*United States v. Johnson*, 612 F.3d 889 (7th Cir. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*United States v. Johnson*, 685 F.3d 660 (7th Cir. 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50, 51

*United States v. Jones*, 454 F.3d 642 (7th Cir. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28, 29

*United States v. Kirkpatrick*, 589 F.3d 414 (7th Cir. 2009).. . . . . . . . . . . . . . . . . . . . . . . . . . 43, 57

*United States v. Krumwiede*, 599 F.3d 785 (7th Cir. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*United States v. Leahy*, 169 F.3d 433 (7th Cir. 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 54

*United States v. Lopez*, 974 F.2d 50 (7th Cir. 1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 48

*United States v. Love*, 680 F.3d 994 (7th Cir. 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 26

*United States v. Miller*, 601 F.3d 734 (7th Cir. 2010).. . . . . . . . . . . . . . . . . . . . . . . 35, 49, 50, 52

*United States v. Molnar*, 590 F.3d 912 (8th Cir. 2010).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

*United States v. Moreland*, 703 F.3d 976 (7th Cir. 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 52

*United States v. Natour*, 700 F.3d 962 (7th Cir. 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*United States v. Omole*, 523 F.3d 691 (7th Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . 43, 46, 53, 57

*United States v. Panice*, 598 F.3d 426 (7th Cir. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 55

*United States v. Patrick*, 707 F.3d 815 (7th Cir. 2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47, 48

*United States v. Reyes-Medina*, 683 F.3d 837 (7th Cir. 2012). . . . . . . . . . . . . . . . . . . . . . . . . . 21

*United States v. Rone*, 743 F.2d 1169 (7th Cir. 1984).. . . . . . . . . . . . . . . . . . . . . . . 19, 38, 39, 42

*United States v. Runyon*, 707 F.3d 475 (4th Cir. 2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 56

*United States v. Saenz*, 623 F.3d 461 (7th Cir. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 34, 36

*United States v. Salinas*, 365 F.3d 582 (7th Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

*United States v. Sosa*, 789 F.2d 1257 (7th Cir. 1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

*United States v. Tapia*, 610 F.3d 505 (7th Cir. 2010). . . . . . . . . . . . . . . . . . . . . . . . 18, 22, 27, 28

*United States v. Taylor*, 701 F.3d 1166 (7th Cir. 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 54

*United States v. Tichenor*, 683 F.3d 358 (7th Cir. 2012).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*United States v. Tucker*, 404 U.S. 443 (1972). . . . . . . . . . . . . . . . . . . . . . . . . . . . 28, 31, 33, 37

*United States v. Vizcarra*, 668 F.3d 516 (7th Cir. 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*United States v. Wilson*, 614 F.3d 219 (6th Cir. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34, 35

**STATUTES**

18 U.S.C. § 521. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 54

18 U.S.C. § 922(g)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 3

18 U.S.C. § 3231. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

18 U.S.C. § 3553(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 47, 49

18 U.S.C. § 3553(a)(6). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43, 55

18 U.S.C. § 3742. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

28 U.S.C. § 1291. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

**OTHER AUTHORITIES**

Fed. R. Crim. P. 32(a)(1)(A). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

Fed. R. Crim. P. 32(c)(3)(A). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

Fed. R. Crim. P. 32(i)(1)(A).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 12, 19, 38, 42

http://www.atf.gov/press/ releases/2012/03/030112-
chi-two-chicago-area-men-plead-guilty-to-federal-racketeering-conspiracy-
charges.html.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

http://www.fbi.gov/stlouis/ press-releases/2012/
two-chicago-area-men-plead-guilty-to-federal-racketeering-conspiracy-charges. . . . . . . 9

U.S. Const. amend. V. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 28, 32, 56

USSC, *Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines* (2004). . . . . . . 50

USSG App. C, Vol. III, Amend. 691 . . . . . . . 22

USSG § 2K2.1 . . . . . . . 25

USSG § 2K2.1, comment. (n.13(A)). . . . . . . 22

USSG § 2K2.1, comment. (n.13(A)(ii)). . . . . . . 23

USSG § 2K2.1, comment. (n.13(B)). . . . . . . 23

USSG § 2K2.1, comment. (n.13(D)). . . . . . . 2, 18, 21, 22, 25, 26, 27

USSG § 2K2.1, comment. (n.14(C)). . . . . . . 24, 25, 27

USSG § 2K2.1(a)(4)(B). . . . . . . 5, 54

USSG § 2K2.1(a)(7). . . . . . . 54

USSG § 2K2.1(b)(1)(A). . . . . . . 5

USSG § 2K2.1(b)(4). . . . . . . 6

USSG § 2K2.1(b)(5). . . . . . . 6, 22

USSG § 2K2.1(b)(6). . . . . . . 22, 25

USSG § 2K2.1(b)(6)(B). . . . . . . 2, 6, 23, 27

USSG § 3D1.2(b). . . . . . . 5

USSG § 3E1.1. . . . . . . 6

USSG § 5G1.2(d). . . . . . . 55

USSG § 5H1.1. . . . . . . 52

USSG § 5H1.6. . . . . . . . . . 48

USSG § 5K2.0. . . . . . . . . . 16, 53

USSG § 5K2.6. . . . . . . . . . 16, 53

USSG § 5K2.14. . . . . . . . . . 16, 53, 54

USSG § 5K2.17. . . . . . . . . . 16, 53, 54

USSG § 5K2.18. . . . . . . . . . 16, 53

USSG § 5K2.20 . . . . . . . . . . 16, 53, 54

## JURISDICTIONAL STATEMENT

1. The jurisdiction of the United States District Court for the Northern District of Illinois was founded upon 18 U.S.C. § 3231. In July 2011, a grand jury returned a three-count indictment against Mr. Johns, charging him in each count with possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). R.1. In January 2012, Johns pleaded guilty to all three counts.

2. The jurisdiction of the United States Court of Appeals for the Seventh Circuit is founded upon 28 U.S.C. § 1291 and 18 U.S.C. § 3742 and is based upon the following particulars:

i. Date of entry sought to be reviewed:

(a) Sentence imposed on July 31, 2012;

(b) Judgment in a Criminal Case entered on October 22, 2012.

ii. Filing date of motion for a new trial: n/a;

iii. Disposition of motion and date of entry: n/a;

iv. Filing date of notice of appeal: November 4, 2012.

## ISSUES PRESENTED FOR REVIEW

I. Whether the district court erred when it imposed a 4-level other-felony-offense enhancement (USSG § 2K2.1(b)(6)(B)) because: (1) Application Note 13(D) to USSG § 2K2.1 precludes the enhancement under the particular facts of this case; and (2) the district court's findings were insufficient to support the enhancement?

II. Whether the district court committed reversible error when it imposed an above-Guidelines-range sentence based on clearly erroneous facts, in violation of the Due Process Clause of the United States Constitution?

III. Whether the district court's violation of Federal Rule of Criminal Procedure 32(i)(1)(A) amounts to reversible error?

IV. Whether the district court's explanation for the 160-month sentence was not sufficiently compelling to support the significant upward variance?

V. Assuming no error by itself requires remand, whether remand for resentencing is required by the cumulative error doctrine?

## STATEMENT OF THE CASE[1]

This is a direct criminal appeal from a conviction and above-Guidelines-range sentence for possession of firearms by a convicted felon.

In July 2011, a federal grand jury returned a three-count indictment against Mr. Johns, charging him in all three counts with possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). R.1. In January 2012, Mr. Johns pleaded guilty to all three counts without the benefit of a written plea agreement. R.29, 30, 57.

In July 2012, the district court imposed 120-month concurrent sentences on Counts One and Two, and a 40-month consecutive sentence on Count Three, for a total sentence of 160 months' imprisonment. App. at 2. The district court also imposed 2-year concurrent terms of supervised release on each Count, as well as the $100 mandatory special assessment on each Count. *Id.* at 3, 5.

The district court entered Judgment on October 22, 2012, R.48, and Johns filed a timely notice of appeal on November 4, 2012, R.49.

---

[1]The following abbreviations are used herein: "App." for the Appendix; "R" for the record on appeal; "PSR" for the Presentence Investigation Report; "SOR" for the Statement of Reasons; "Gov't Version" for the Government's Version of the Offense (possibly) attached to the PSR; and "Guidelines" for the United States Sentencing Guidelines.

## STATEMENT OF FACTS

### A. The Indictment

In July 2011, a grand jury returned the above-mentioned three-count indictment. R.1. Count One alleged that Johns possessed a .20 caliber shotgun on July 28, 2010. *Id.* at 1. Count Two alleged that Johns possessed a .45 caliber rifle on September 17, 2010. *Id.* at 2. Count Three alleged that Johns possessed a .38 caliber revolver on November 9, 2010. *Id.* at 3. The indictment further alleged that Johns was a convicted felon and that the firearms traveled in interstate commerce. *Id.* at 1-3.

### B. The Guilty Plea

Johns pleaded guilty to all three counts in January 2012. R.29; R.57 at 18. He did not sign a plea agreement with the government, although he signed a plea declaration the same day he pleaded guilty. R.30; R.57 at 7. In the plea declaration, Johns provided a factual basis for each count. R.30. On Count One, Johns admitted that he sold a confidential informant ("CI") the .20 caliber shotgun for $175. *Id.* at 1-2. On Count Two, he admitted that he sold the CI a "9 millimeter caliber rifle" for $1000. *Id.* at 2-3. On Count Three, he admitted that he sold the CI the .38 caliber revolver for $400. *Id.* at 3-4. He further admitted that the firearms had traveled in interstate commerce and that he had a prior felony conviction from 2009 for possession of a controlled substance, for which he received a 2-year term of probation. *Id.* at 1-4.

At the change-of-plea colloquy, the parties agreed that the rifle charged in Count Two was a 9 millimeter, not a .45 caliber as stated in the indictment. R.57 at 5-6. The factual basis for the plea mirrored the factual basis provided in the plea declaration. *Id.* at 13-17.

**C. The PSR**

Prior to sentencing, the probation officer prepared the PSR. In the Offense Conduct Section, the probation officer included the following: (1) both Johns and the CI were members of the Wheels of Soul Motorcycle Club ("WOS"); (2) Johns knew the CI was a convicted felon, and the CI knew that Johns was on probation; (3) Johns knew that the CI intended to resell the guns for profit; (4) during the first controlled buy (Count One), Johns told the CI that he had a second gun, and he intended to use it in retaliation for the murder of another WOS member; (5) the 9 millimeter rifle had "dual capacity for fully automatic and semi-automatic;" and (6) the 9 millimeter rifle was stolen from a warehouse in 2001. PSR at 5.

With respect to the Guidelines calculations, the probation officer grouped the counts, pursuant to USSG § 3D1.2(b). *Id.* at 6. The probation officer set the base offense level at 20, pursuant to USSG § 2K2.1(a)(4)(B), then included 4 specific-offense-characteristic enhancements: (1) a 2-level enhancement because the offense involved three firearms, USSG § 2K2.1(b)(1)(A); (2) a 2-level enhancement because the 9

millimeter rifle was stolen, USSG § 2K2.1(b)(4); (3) a 4-level enhancement because Johns trafficked the firearms, USSG § 2K2.1(b)(5) (hereinafter referred to as the trafficking enhancement); and (4) a 4-level enhancement because Johns transferred a firearm with knowledge that it would be used or possessed in connection with another felony offense, USSG § 2K2.1(b)(6)(B) (hereinafter referred to as the other-felony-offense enhancement). *Id.* at 6-7. On this latter enhancement, the PSR did not identify the "other felony offense," although it noted that the CI "was a convicted felon and he was going to re-sell the firearms for profit." *Id.* at 7.

With a 3-level reduction for acceptance of responsibility, USSG § 3E1.1, Johns's offense level was set at 29. *Id.*

Johns had four prior convictions, but only one received criminal history points. *Id.* at 8-9. Two convictions were too old to receive points: (1) a 1988 Illinois conviction for battery, committed when Johns was 18 years old, which resulted in a non-custodial sentence to court supervision; and (2) a 1991 Arizona conviction for assault, committed when Johns was 21 years old, which resulted in a 30-day jail sentence and a 1-year term of probation. *Id.* at 8. The third non-countable conviction was for driving on a suspended license in 1996, which resulted in a non-custodial term of supervision. *Id.* at 8.

Johns received 1 criminal history point for a 2009 Illinois conviction for possession of

a controlled substance, for which he received a 1-day jail sentence, a 2-year term of probation, and a $1180 fine. *Id.* at 9. He also received 2 points because he committed the instant offense while serving this 2-year term of probation. *Id.* With three criminal history points, his criminal history category was set at II. *Id.*

With an offense level of 29 and a criminal history category of II, Johns's advisory Guidelines range was 97 to 121 months' imprisonment. *Id.* at 16. The probation officer found no reason that would support either a departure or a variance from the advisory Guidelines range. *Id.* at 17-18.

In the Personal and Family Data Section, the probation officer noted the following: (1) Johns was born in November 1969 (making him 41 years old when he committed the offenses); (2) he was married for 8 years (from 1989 to 1996); (3) he was the second youngest of 10 children; (4) he has regular contact, and a good relationship, with his siblings; (5) he grew up in the projects and witnessed many violent episodes; and (6) he has eight children from six relationships, and has a good relationship with his children. *Id.* at 12-13.

Johns's oldest child is a 24-year-old college student. *Id.* at 13. His second oldest child is a 19-year-old college student. His third and fourth oldest are brothers, one 18 and one 19, and both are students. His fifth child was killed in 2008 at the age of 16. He also has two children with his ex-wife, and they are 14 and 11 years old. His youngest child is 10,

and her mother is Johns's fiancee. *Id.*

The PSR further reported that Johns was hospitalized in 2009 with a blood infection and had to learn to walk again, has no substance abuse problems, is a high school graduate, and worked as a roofer from 2000 to 2009 (before he was hospitalized). *Id.* at 14-15.

**D. The Sentencing Memoranda**

On May 22, 2012, Johns filed a sentencing memorandum. R.41. He objected to the trafficking enhancement and the other-felony-offense enhancement. R.41 at 2-5. He also discussed his family ties and responsibilities, his ties to the community, and his employment history. *Id.* at 6-7. He mentioned his children, but clarified that his youngest daughter is not actually his daughter; it is his fiancee's daughter, but he is a father figure to her. *Id.* at 6. He noted that he volunteered as a youth coach and that he sacrificed his body for another person's in the early 1990s, when he pushed that person to safety, but was hit by a car, breaking both of his legs. *Id.* Finally, he noted his employment as a roofer, until his health problems, as well as his employment as a barber. *Id.* at 6-7.

The government filed its sentencing memorandum the day before the sentencing hearing. R.45. The government reiterated all of what the PSR included in the Offense

Conduct Section. But it also went further. It asserted that Johns and "the WOS leader,"[2] Allan Hunter, who was indicted on RICO charges in St. Louis, discussed the sale of crack cocaine, guns, and ammunition, as well as "gang violence and seeking retaliation within the gang for violence." *Id.* at 2, 7. It cited "Exhibit A to Government's Version" in support of these assertions. It also cited the last controlled buy, asserting that, during this transaction, Johns told the CI that Hunter asked him for a gun and that he previously sold guns to Hunter and Hunter's brother. *Id.* at 7.

The government did not introduce a transcript of this recorded conversation, however, and, again, the PSR did not include any information on Hunter. Moreover, a review of the Government's Version, which is attached to the PSR (or at least the copy given to undersigned counsel), shows that the conversations between Johns and Hunter took place on January 11, 2011, February 10, 2011, and February 23, 2011, well after the last controlled buy on November 9, 2010. Gov't Version Exh. A. During the first conversation, Hunter told Johns that he might drive rather than fly to Philadelphia so that he could "take his banger." *Id.* at 2. Hunter also discussed a prior instance in which he hid contraband.

---

[2]Hunter was the "President of the Midwest Region of the Wheels of Soul," not the leader of the gang. *See* http://www.fbi.gov/stlouis/ press-releases/2012/ two-chicago-area-men-plead-guilty-to-federal-racketeering-conspiracy-charges; http://www.atf.gov/press/ releases/2012/03/030112- chi-two-chicago-area-men-plead-guilty-to-federal-racketeering-conspiracy- charges.html.

During the second conversation, there appears to have been some conversation about a transaction ("you wanna handle that function"), but it is Hunter who says, "you know I got some showcatchers," which would indicate that Hunter was the seller, not Johns. *Id.* at 3. In any event, the government never introduced any evidence that Johns and Hunter completed a transaction, let alone one involving a firearm (or that the term "showcatcher" is synonymous with guns or drugs).

Perhaps this Court can decipher the third conversation. *Id.* at 4-6. This is apparently where the government finds a discussion of "gang violence and seeking retaliation within the gang for violence." Maybe. But there was no discussion of any sort of transaction between the two. Or drugs or guns, as far as undersigned counsel can tell. And at one point Hunter tells Johns that he is the last person to learn about something ("last man on the totem pole with that one. A whole lot of shit happened since then.").

The government also asserted that two of the controlled buys took place in an alley behind Johns's residence. R.45 at 5, 6. On the third transaction, the government again cited the conversation between the CI and Johns, which took place on October 21, 2010, around 3 weeks prior to the last transaction. *Id.* at 6. During this controlled buy, the CI apparently "referr[ed] to a fictitious scenario in which the CI was pretending to re-sell the guns purchased from Defendant for profit." The CI then agreed to give Johns a cut of his profits. *Id.* The government never alleged, however, that Johns and the CI actually

conducted such transactions.

The government agreed with the calculations in the PSR and responded to Johns's objections.[3] On the 4-level trafficking enhancement, the government asserted, *inter alia*, that Johns knew that the CI intended to dispose of the firearms unlawfully because the CI told Johns that he intended to resell the guns at a profit, as well as because of the "clandestine nature of the gun transactions." *Id.* at 9-10. The government also asserted that the CI told Johns that he "was a convicted felon and on probation," *id.* at 10, although earlier in the memorandum the government claimed that Johns, and not the CI, was on probation (which was true), *id.* at 2-3.

On the other-felony-offense enhancement, the government again relied on the October 2010 recorded conversation, where the CI talked about reselling guns for profit. *Id.* at 11-12. At no point, however, did the government identify the particular felony offense at issue.

The government asked for a sentence within the Guidelines range. *Id.* at 13-16. It asked the district court to "give serious consideration to the advisory Guidelines range" because: (1) the Guidelines "are the sole factor in § 3553(a) that provides any objective sentencing range that can practicably promote the overall goal of minimizing unwarranted sentencing disparities, which is itself a statutorily-mandated factor;"

---

[3]In doing so, the government referred to docket entries 97 and 107. Those docket entries do not exist, and so it is unclear what the government actually responded to below. R.45 at 8.

(2) "[t]he only way to prevent widespread unwarranted disparities is to give serious consideration to the Guidelines;" (3) "the Guidelines generally deserve serious consideration because they are the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions;" and (4) "the Commission is charged by statute to periodically review and revise the Guidelines [which is] another reason to seriously consider the advisory range."

In support of a Guidelines range sentence, the government cited the nature and circumstances of the offense and Johns's personal characteristics. *Id.* at 15-16. The government concluded: "defendant has earned the Guideline range sentence that he now faces." *Id.* at 16. "[T]he best way to avoid unwarranted sentencing disparities is to sentence defendant within the Guidelines that apply specifically to the facts of this case. A Guidelines range sentence is appropriate in this case." *Id.*

**E. The Sentencing Hearing**

At the sentencing hearing, the district court first asked for objections to the PSR, but failed to verify that Johns and his attorney had read and discussed the PSR, as required by Federal Rule of Criminal Procedure 32(i)(1)(A). R.58 at 2.

The district court overruled the objection to the trafficking enhancement based on the recorded conversation. App. at 7. The district court found that Johns "clearly knew

what the informant was referring to because he said, oh, if you're going to make money off of reselling these guns, I want a piece of the action." "[A]nd the CI said, no, that's my dime; you're getting your 300 and some bucks and that's all you're getting. That's a pretty clear and accurate description that the defendant knew what was happening to these weapons after he sold them." *Id.*

The district court also overruled the objection to the other-felony-offense enhancement. *Id.* at 8. The district court noted, "[i]t was the same issue, which I already ruled on." *Id.* In other words, the trafficking enhancement and the other-felony-offense enhancement applied for the same reason.

The district court adopted the PSR's Guidelines calculations (97 to 121 months' imprisonment). *Id.* The government reiterated its request for a sentence within the Guidelines range, specifying a 120-month sentence. R.58 at 17-23. It made a few assertions not made in the sentencing memorandum or included in the PSR: (1) Johns sold two of the guns "out of his own residence . . . where . . . he lived with his fiancee and one of his children," *id.* at 17, 20; (2) a fourth gun was found at Johns's home during a consensual search in July 2011, *id.* at 19; (3) Johns made a living "selling guns and crack cocaine;" *id.* at 20; (4) Johns "had a previous order of protection in which he was identified as armed and dangerous," *id.*; and (5) Johns had "a history of disobeying court supervision," *id.* at 22. The government also asserted that Johns had "eight

biological children from six relationships." *Id.* at 22.

On the nature of the firearms, the government had this to say: "the type of firearms that the defendant sold were firearms that – with the exception of the revolver, which is still a very dangerous, deadly weapon – were actually designed to create maximum harm to any intended victim." *Id.* at 18. On Johns's age, the government asserted that, because Johns committed the offenses when he was 39 or 40 (he was actually 41), "he's a person who had kind of started later in life to engage in this type of conduct," which the government found to be an aggravating factor. *Id.* at 20-21.

In response, Johns's attorney reiterated the arguments made in his sentencing memorandum. *Id.* at 23-25. Johns allocuted. *Id.* at 26-27.

The district court imposed sentence. *Id.* at 10-14. It found a "very strong need" for specific and general deterrence. *Id.* at 10. It referred to the firearms as "fully-automatic weapons, shotguns and *semiautomatic handguns*," and noted that the thought of such weapons being sold to gangs "is a grave, extreme and present active danger to communities . . . all over this country." *Id.* (emphasis added). The district court noted that Johns was on probation when he committed the offenses, that he grew up in a rough neighborhood, and that his childhood was difficult. *Id.* at 10-11. The district court also considered "the fact that the defendant has, if I understand it correctly, some eight children from six different relationships. This is not a picture of responsible conduct. It

is a rather dark picture, frankly." *Id.* at 11.

The district court further considered Johns's age, finding that Johns:

> engaged in this conduct at an age where statistically one might expect for a person who has had a checkered background with contacts with the law to be maturing into a less active phase of criminal conduct and to be less likely to be a danger of recidivism. Unfortunately, I don't see that here. It appears that the defendant has increased his conduct, the nature and frequency of it. And, therefore, the Court feels there is a significant danger of recidivism in this particular case.

*Id.* at 11.

The district court imposed 120-month sentences on Counts One and Two and a 40-month consecutive sentence on Count Three, for a total sentence of 160 months' imprisonment, a sentence some 32% greater than the highest end of the Guidelines range. *Id.* The district court further imposed 2-year concurrent terms of supervised release and the $100 special assessment on each count. *Id.* at 11-12.

The district court noted that the sentence was above the Guidelines range:

> for many of the reasons I've just indicated, including the extreme danger to the community posed by the defendant's conduct; the defendant's statement that he himself was retaining a weapon for use in the commission of revenge for a murder of a gang member; the fact that the defendant knew that the guns were being given to people who were not entitled to them and were being resold at a profit; the violent nature of the people to whom he sold these guns and the activities that they were involved in, which posed extreme dangers to the communities; and the need to protect the public from all of these factors, including the likelihood that the defendant will repeat this type of conduct when given the opportunity.

*Id.* at 13.

The government asked, "just for the record, even assuming the enhancements that we had discussions about had not applied, would the Court impose the same sentence," and the district court answered, "[t]he Court would impose the same sentence . . . for the reasons stated, specifically deterrence, danger to the public, likelihood of recidivism, which factors I think the guidelines insufficiently accounted for." *Id.* at 13-14.

In the written Statement of Reasons, the district court checked the box for six Guidelines provisions as reasons for the upward variance: (1) USSG § 5K2.0 (aggravating circumstances); (2) USSG § 5K2.6 (Weapon or Dangerous Weapon); (3) USSG § 5K2.14 (Public Welfare); (4) USSG § 5K2.17 (High-Capacity, Semiautomatic Weapon); (5) USSG § K2.18 (Violent Street Gang); and (6) USSG § 5K2.20 (Aberrant Behavior). SOR at 2.

The district court also included a written "[r]easons for sentence." *Id.* at 5. It concluded that "the guidelines do not adequately address the danger to the public or the need for general and specific deterrence under the facts of this particular case." It stated that Johns "sold a fully automatic rifle capable of loading as many as 50 rounds of ammunition in one clip, a *semiautomatic handgun* and a shotgun to a confidential informant he knew as a convicted felon and a member of a violent street gang." (emphasis added). The district court further noted that: (1) Johns was on probation at the time; (2) he committed the offense after his son was shot and killed; (3) he "boasted

of having his own gun which he intended to use to avenge the murder of a fellow gang member; (4) "[i]n his personal life, he has been irresponsible to a high degree, having fathered some eight children through six separate relationships;" and (5) he owed thousands of dollars in child support. The district court concluded that there was very little likelihood of rehabilitation and that Johns posed a danger to the community. *Id.*

Johns appealed. This Brief follows.

## SUMMARY OF ARGUMENT

The district court imposed two 4-level enhancements for the same reason: Johns trafficked the firearms to the CI, who then indicated his intent to traffic the firearms to others. App. at 7, 8. This was error. Application Note 13(D) provides that, when the trafficking enhancement applies, the other-felony-offense enhancement does not apply if the other felony offense was "a firearms possession or trafficking offense." Because the other felony offense was a trafficking offense (i.e., the reselling of the firearms), the district court should not have applied the other-felony-offense enhancement. This Court should vacate the sentence and remand for resentencing.

Alternatively, the district court's findings in support of the other-felony-offense enhancement were insufficient because it failed to identify the other felony offense, to show that the elements of that felony were satisfied, and to support its conclusions by a preponderance of the evidence from the facts in the record. *United States v. Tapia*, 610 F.3d 505, 513 (7th Cir. 2010); App. at 7-8. It is clear that the district court applied the enhancement because the CI told Johns that he intended to resell the guns. App. at 7-8. The question the district court did not answer, however, is whether this conduct amounts to a felony under federal, state, or local law. Because this Court requires an explicit finding on this point, the district court erred, and the case must be remanded for resentencing for this reason as well.

The district court also relied on inaccurate information when it imposed sentence. At the sentencing hearing and in its written Statement of Reasons, the district court justified the above-Guidelines-range sentence because Johns sold a fully automatic weapon, "a semiautomatic handgun and a shotgun." SOR at 5; App. at 10. Yet, the .38 caliber revolver was not a semiautomatic handgun. The district court clearly relied on this inaccurate information when it imposed the sentence. *Id.* This was reversible error. *See, e.g., United States v. Saenz*, 623 F.3d 461, 468-69 (7th Cir. 2010). The district court also misstated the facts about Johns's children. App. at 11. And again, the record clearly shows that the district court relied on this inaccurate information when it imposed the above-Guidelines-range sentence. *Id.*; SOR at 5.

Moreover, Federal Rule of Criminal Procedure 32(i)(1)(A) requires the district court to verify that the defendant and the defendant's attorney have read and discussed the PSR. The district court did not do this in this case. Nor is there anything in the record that implies that Johns read the PSR or discussed it with his attorney. Considering the number and nature of objections to the PSR, the inaccuracies in the PSR, Johns's pretrial detention, Johns's unfamiliarity with the criminal justice system, and the government's careless treatment of the facts in this case, this violation also amounts to reversible error. *United States v. Rone*, 743 F.2d 1169, 1171 (7th Cir. 1984).

Moreover, the district court imposed a substantial upward variance. The reasons for

this substantial upward variance, however, are not sufficiently compelling to support the degree of variance. Some of the reasons were already taken into account by the Guidelines, and others had no support in the record.

Finally, the cumulative error doctrine requires a remand for resentencing. In light of the significant upward variance imposed by the district court, the multiple errors committed at the sentencing hearing clearly had an affect on the outcome of the proceedings.

For all of these reasons, this Court should vacate the sentence and remand for resentencing.

## ARGUMENT

**<u>Standards of Review</u>**

This Court reviews a district court's sentencing procedure *de novo*. *United States v. Reyes-Medina*, 683 F.3d 837, 840 (7th Cir. 2012). This includes the interpretation of a Guideline and a Guideline's application to the facts in a particular case, *United States v. Johnson*, 612 F.3d 889, 892 (7th Cir. 2010), whether the district court's factual findings were sufficient to support a Guidelines enhancement, *United States v. Natour*, 700 F.3d 962, 974 (7th Cir. 2012), Constitutional challenges to sentences, *United States v. Tichenor*, 683 F.3d 358, 362 (7th Cir. 2012), violations of the Federal Rules of Criminal Procedure, *United States v. Thompson*, 599 F.3d 595 (7th Cir. 2010), and whether the district court failed to provide an adequate explanation for an above-Guidelines-range sentence, *United States v. Aljabari*, 626 F.3d 940, 950 (7th Cir. 2010).

**I. The district court erred when it imposed the other-felony-offense enhancement because: (1) Application Note 13(D) precludes its application in this case; and (2) the district court's findings were insufficient to support the enhancement.**

Below, the district court imposed the other-felony-offense enhancement for the same reasons it imposed the trafficking enhancement. App. at 7-8. Because the underlying conduct in support of the enhancements involved the trafficking of firearms, this was error. USSG § 2K2.1, comment. (n.13(D)). Because the district court miscalculated the Guidelines range, this Court should remand for resentencing. *United States v. Love*, 680

F.3d 994, 997-98 (7th Cir. 2012). At a minimum, the district court's factual findings were insufficient on the other-felony-offense enhancement, and a remand for resentencing is necessary for that reason as well. *Tapia*, 610 F.3d at 513.

**1. Application Note 13(D) to USSG § 2K2.1 precludes the other-felony-offense enhancement under the particular facts of this case.**

This issue involves the interaction of the trafficking enhancement with the other-felony-offense enhancement.[4] That interaction is expressly addressed in Application Note 13(D) to § 2K2.1 (entitled "Application of Subsection (b)(5) . . . Interaction with Other Subsections"). It states:

> In a case in which three or more firearms were both possessed and trafficked, apply both subsections (b)(1) and (b)(5). If the defendant used or transferred one of such firearms in connection with another felony offense (i.e., *an offense other than a firearms possession or trafficking offense*) an enhancement under subsection (b)(6)(B) also would apply.

USSG § 2K2.1, comment. (n.13(D)) (emphasis added). Because the Application Note involves the interaction of the two enhancements, a discussion of those enhancements is necessary.

On its face, the trafficking enhancement is simple enough. It provides for a 4-level enhancement "[i]f the defendant engaged in the trafficking of firearms." USSG § 2K2.1(b)(5) Yet, it is not that simple because Application Note 13(A) limits its reach.

---

[4]Prior to November 2006, the current version of the other-felony-offense enhancement, § 2K2.1(b)(6), was found at § 2K2.1(b)(5), and the current version of the trafficking enhancement, § 2K2.1(b)(5), did not exist. USSG App. C, Vol. III, Amend. 691.

In order for the enhancement to apply, the defendant must have known, or had reason to believe, that his "conduct would result in the transport, transfer, or disposal of a firearm to an individual . . .who intended to use or dispose of the firearm unlawfully." USSG § 2K2.1, comment. (n.13(A)(ii)). And so, in this case, the district court found taht the trafficking enhancement applied because Johns transferred a firearm to the CI, and he had reason to believe that the CI, a convicted felon, intended to sell the gun to another person. App. at 7-8; PSR at 5.[5]

Similarly, the other-felony-offense enhancement applies if the defendant, *inter alia*, "transferred any firearm or ammunition with knowledge, intent, or reason to believe that it would be used or possessed in connection with another felony offense." USSG § 2K2.1(b)(6)(B). The Application Notes define "another felony offense as "any federal,

[5] There is another option as well: "the transport, transfer, or disposal of a firearm to an individual . . . whose possession or receipt of the firearm would be unlawful." The Application Note limits this option even further, however, by defining the phrase "individual whose possession or receipt of the firearm would be unlawful" to an individual "who (i) has a prior conviction for a crime of violence, a controlled substance offense, or a misdemeanor crime of domestic violence; or (ii) at the time of the offense was under a criminal justice sentence, including probation, parole, supervised release, imprisonment, work release, or escape status." USSG § 2K2.1, comment. (n.13(B)).

It is clear that the district court did not rely on this provision. App. at 7; *see also* PSR at 7. Nor could it. The government never introduced any evidence on the nature of the CI's prior conviction (i.e., whether it was a "crime of violence, a controlled substance offense, or a misdemeanor crime of domestic violence.") Nor did the government introduce evidence to establish that the CI was under a criminal justice sentence during the controlled buys. The government's allegations in its sentencing memorandum are contradictory on this point. It first alleges that the CI knew that Johns was on probation, R.45 at 2-3, but then alleges that Johns knew that the CI was on probation, *id.* at 10. This latter assertion had no evidentiary basis. The PSR indicates that the CI knew that Johns was on probation, not that Johns knew that the CI was on probation. PSR at 5; *see also* R.45 at 2-3. That is not enough to support the 4-level enhancement. USSG § 2K2.1, comment. (n.13(B)).

state, or local offense, other than the explosive or firearms possession or trafficking offense, punishable by imprisonment for a term exceeding one year, regardless of whether a criminal charge was brought, or a conviction obtained." USSG § 2K2.1, comment. (n.14(C)).

So, as a practical matter, if "the other felony offense" is the disposal, or trafficking, of the firearm, the 4-level other-felony-offense enhancement applies if the defendant had reason to believe that the other individual would unlawfully dispose of, or traffic, the firearm.[6] In effect, in this factual circumstance, this 4-level enhancement applies for the identical reason that the 4-level trafficking enhancement applies: the defendant transferred a firearm to an individual with reason to believe that this individual would unlawfully transfer the firearm.

And that is exactly what happened in this case. The district court explained why it applied the trafficking enhancement. App. at 7. It relied on the recorded conversations and found that Johns knew that the CI intended to dispose of the firearms unlawfully. *Id.* It then applied the other-felony-offense enhancement for the identical reason ("It was the same issue, which I already ruled on."). *Id.* at 8. The government actually urged this factual finding ("just to have a clear record, it was on the same basis as the objection regarding the trafficking."). *Id.* at 8.

---

[6]This assumes that the disposal of a firearm qualifies as a felony offense, something the district court never found, as discussed below.

This begs the question: can two 4-level enhancements apply for the identical reason, or is this impermissible double counting? We know that "double counting is generally permissible unless the text of the guidelines expressly prohibits it." *United States v. Vizcarra*, 668 F.3d 516, 519 (7th Cir. 2012). And here, Application Note 13(D) is explicit: if the trafficking enhancement applies, the other-felony-offense enhancement applies only if the other felony offense is "an offense other than a firearms possession or trafficking offense." Thus, the plain language of the Application Note supplies the answer: because the other felony offense in this case was a firearms trafficking offense, it was improper to apply § 2K2.1(b)(6)'s 4-level enhancement. *See, e.g., Connecticut Nat. Bank v. Germain*, 503 U.S. 249, 253–254 (1992) ("We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there. When the words of a statute are unambiguous, then, this first canon is also the last: judicial inquiry is complete."); *United States v. Krumwiede*, 599 F.3d 785, 790-91 (7th Cir. 2010) (affirming based on plain language of § 2K2.1 and its Application Note).

The structure of § 2K2.1 supports this conclusion. *See, e.g., Kasten v. Saint-Gobain Performance Plastics Corp.*, 131 S.Ct. 1325, 1331 (2011) (interpretation of a statutory phrase "depends upon reading the whole statutory text"). Application Note 13(D) refers explicitly to "*a* firearms possession or trafficking offense." (emphasis added). In contrast, Application Note 14(C) defines the phrases "another felony offense" and

"another offense" to exclude "*the* explosive or firearms possession or trafficking offense." (emphasis added).

If the Sentencing Commission wanted to limit the other-felony-offense enhancement's reach only in situations where the other felony offense was *the* trafficking offense, and not *a* trafficking offense, it knew how to do so*. See, e.g.*, *Credit Suisse Sec. LLC v. Simmonds*, 132 S.Ct. 1414, 1420 (2012) ("Had Congress intended this result, it most certainly would have said so."). After all, "when the legislature uses certain language in one part of the statute and different language in another, the court assumes different meanings were intended." *Sosa v. Alvarez–Machain*, 542 U.S. 692, 711, n.9 (2004).

In the end, the plain language of Application Note 13(D) is clear: if an individual receives a 4-level trafficking enhancement, he may also receive a 4-level other-felony-offense enhancement, unless the other felony offense is "a firearms possession or trafficking offense." Because the facts of this case fall squarely within the Application Note's exception, the district court erred when it applied the other-felony-offense enhancement.

Because of this Guidelines error, the sentence should be vacated and the case remanded for resentencing. *Love*, 680 F.3d at 997-98 (a Guidelines error amounts to reversible error "because it is impossible to know whether the district court would have

imposed the same sentence had it not committed this procedural error."). Without the 4-level enhancement, Johns's offense level is 25, and, coupled with a criminal history category of II, his advisory Guidelines range is 63 to 78 months' imprisonment. The 160-month sentence imposed in this case is double even the high end of that range. By any account, that is reversible error.

**2. Alternatively, the district court's factual findings were insufficient to support the enhancement.**

Assuming that Application Note 13(D) does not preclude two 4-level enhancements for the same conduct, remand for resentencing would still be required. Again, the other-felony-offense enhancement applies if the defendant, *inter alia*, "transferred any firearm or ammunition with knowledge, intent, or reason to believe that it would be used or possessed in connection with another felony offense." USSG § 2K2.1(b)(6)(B). And again, the Application Notes define "another felony offense" as "any federal state, or local offense, other than the explosive or firearms possession or trafficking offense, punishable for a term exceeding one year." USSG § 2K2.1, comment., (n. 14(C)).

In order to apply this enhancement, a district court must identify the particular felony at issue, show that the elements of that felony were satisfied, and support its conclusions by a preponderance of the evidence from the facts in the record. *Tapia*, 610 F.3d at 513. That did not happen in this case. App. at 7-8. The district court never identified a particular felony, nor the elements of that felony. And because it failed the

first two steps, it could not have supported its determination by a preponderance of the evidence from the facts in the record. *Id.*

Instead, the district court applied the enhancement because Johns had reason to believe the CI would resell the guns, and so the other felony offense would be the CI's reselling of the guns. The question is: (1) is that a felony offense; (2) if so, what are the elements; and (3) is the record evidence sufficient to satisfy each element by a preponderance of the evidence? *Tapia*, 610 F.3d at 513. Those are questions that need answers, yet went unanswered below. At a minimum, the sentence should be vacated and the case remanded for this reason as well.

## II. The district court committed reversible error because it imposed a significant upward variance based on clearly erroneous facts, in violation of the Due Process Clause of the United States Constitution.

A district court commits a significant procedural error when it selects a sentence based on clearly erroneous facts. *Gall v. United States*, 552 U.S. 38, 51 (2007). This is because all criminal defendants have a constitutional right, rooted in the Due Process Clause, to be sentenced on the basis of accurate information. *United States v. Jones*, 454 F.3d 642, 652 (7th Cir. 2006) (citing *United States v. Tucker*, 404 U.S. 443, 447 (1972)). When a district court relies on inaccurate information to impose sentence, the sentence must be vacated and the case remanded for resentencing. *Id.; see also United States v. ex rel. Welch v. Lane*, 738 F.2d 863, 865 (7th Cir. 1984).

Below, the district court stated that Johns sold "fully-automatic weapons, shotguns and semiautomatic handguns." App. at 10. In its written Statement of Reasons, it found that Johns "sold a fully automatic rifle . . ., a semiautomatic handgun and a shotgun to a confidential informant." SOR at 5. That was an inaccurate statement. This case has nothing to do with a "semiautomatic handgun."

The district court also claimed that Johns "fathered eight children through six separate relationships." *Id.*; App. at 11. That too was inaccurate. The district court relied on these inaccuracies when it imposed a significant upward variance in this case. App. at 10-14; SOR at 5. This was reversible error. *Jones*, 454 F.3d at 652.

**1. The district court's findings were inaccurate.**

**a. Johns did not sell the CI a "semiautomatic handgun."**

In Count Three, the indictment alleged that Johns possessed a .38 caliber revolver. He admitted the fact when he pleaded guilty. R.30 at 3-4; R.57 at 15-17. The PSR noted the same. PSR at 4-5. At no point was the revolver referred to as a "semiautomatic handgun."

Nor did the government allege, let alone introduce evidence, that the revolver was a "semiautomatic handgun." Indeed, at the sentencing hearing, the government had this to say on the nature of the three firearms: "the type of firearms that the defendant sold were firearms that – *with the exception of the revolver*, which is still a very dangerous,

deadly weapon – were actually designed to create maximum harm to any intended victim." R.58 at 18 (emphasis added). Clearly, the revolver was not a "semiautomatic handgun." That was a finding without evidentiary support.

**b. Johns did not have "eight biological children from six relationships."**

The PSR reports that Johns "has eight biological children from six relationships." PSR at 13. This information came from Johns himself, during an interview with the probation officer in February 2012. *Id.* at 12. Yet, prior to sentencing, via counsel, Johns filed a sentencing memorandum, clarifying that he in fact only had seven biological children from five relationships. R.41 at 6. The memorandum explained that his youngest daughter was not his biological daughter, although he raised her as his own. *Id.*

The PSR also explains that Johns's seven children range from 11 to 24 years old (at the time the PSR was written, in March 2012). PSR at 12-13. This means that, between 1988 and 2001 (a 14-year period), Johns fathered seven children with five different women, but that, since 2001, he has not fathered any children, although he has raised his fiancee's daughter as his own. *Id.*

At sentencing, the government reiterated the inaccurate information in the PSR. R.58 at 21. As did the district court. App. at 11. In its written Statement of Reasons, the district court again noted that Johns "fathered some eight children through six separate

relationships." SOR at 5. This was inaccurate. And, at no point did the district court acknowledge that it had been some 11 years since Johns fathered a child, or that, during those years, he had raised his fiancee's child as his own.

**2. The district court relied on this inaccurate information when it imposed a significant upward variance in this case.**

"A sentencing court demonstrates actual reliance on misinformation when the court gives explicit attention to it, founds its sentence at least in part on it, or gives specific consideration to the information before imposing sentence." *United States v. Salinas*, 365 F.3d 582, 586 (7th Cir. 2004) (quotations and alteration omitted) (quoting *Tucker*, 404 U.S. at 447). The record makes clear that the district court based the sentence in part on the inaccurate information, and, at the least, gave specific consideration to the inaccurate information when it imposed a significant upward variance in this case.

At the sentencing hearing, the first point made by the district court, after stating that "the record establishes a very strong need in this particular case for deterrence," was "[t]he thought of fully-automatic weapons, shotguns and *semiautomatic handguns* being sold for profit to members of an active gang involved in violent behavior is a grave, extreme and present active danger to communities." App. at 10 (emphasis added). And in its written Statement of Reasons, immediately after finding that "the guidelines do not adequately address the danger to the public or the need for general and specific deterrence under the facts of this particular case," the district court stated: "[t]he

defendant sold a fully automatic rifle capable of loading as many as 50 rounds of ammunition in one clip, a *semiautomatic handgun* and a shotgun to a confidential informant . . . .” SOR at 5 (emphasis added).

Also at the sentencing hearing, the district court expressly took “into account the fact that the defendant has, if I understand it correctly, some eight children from six different relationships. This is not a picture of responsible conduct. It is a rather dark picture, frankly.” App. at 11. And again, the district court verified its reliance on this inaccurate information in its written Statement of Reasons when it stated, “[i]n his personal life, he has been irresponsible to a high degree, having fathered some eight children through six separate relationships.” SOR at 5.

And so, when imposing a significant upward variance in this case, the district court relied on inaccurate information.

**3. The district court’s reliance on inaccurate information was reversible error.**

In *Townsend v. Burke*, 334 U.S. 736, 741 (1948), the Supreme Court held that the Due Process Clause requires that district courts sentence defendants based on accurate information. In *Townsend*, the sentencing court recited a litany of the defendant’s prior convictions prior to imposing sentence. *Id.* at 740. The problem was that, with respect to three of the seven convictions named, the defendant was not convicted of the charges. *Id.* Because the defendant “was prejudiced by the court’s own misreading of the

record", the Court concluded, "this prisoner was sentenced on the basis of assumptions concerning his criminal record which were materially untrue. Such a result, whether caused by carelessness or design, is inconsistent with due process of law, and such a conviction cannot stand." *Id.* at 740-41; *see also Tucker*, 404 U.S. at 444, 447.

"*Tucker* and *Townsend* have been read broadly to preclude reliance upon 'improper or inaccurate information' in making the sentencing determination." *United States v. Harris*, 558 F.2d 366, 373 (7th Cir. 1977). Indeed, "[t]he *Townsend-Tucker* principle applies to any information which the sentencing court relies on as the basis for the sentence; the principle is not limited to errors regarding court records." *Lane*, 738 F.2d at 867 n.4.

In *Lane*, 738 F.2d at 864, the sentencing court improperly stated that the defendant had a prior armed robbery conviction, when in fact the conviction was only for robbery. In imposing a statutory maximum sentence, the sentencing court indicated that this armed robbery conviction was "a significant factor" because such a conviction was of the "same magnitude" as the offenses of conviction in that case. *Id.* This Court held that the defendant demonstrated both that the information was inaccurate and that the sentencing court relied on it. *Id.* at 865. "The judge's explicit attention to the misinformation demonstrates his reliance on that misinformation in passing sentence." *Id.* at 866-67.

As important, this Court rejected the government's argument that in light of the

sentencing hearing as a whole, which indicated that the court considered other factors as well, the false information did not form the basis for the sentence. *Id.* at 867. "[T]he fact that the other information might have justified the sentence, independent of the inaccurate information, is irrelevant when the court has relied on inaccurate information as *part* of the basis of the sentence." *Id.* "The reviewing court cannot independently review the accurate information and conclude that the original sentence was still justified. That would be sheer speculation in reconstructing the sentencing court's thought processes." *Id.*

A number of recent cases have reached the same result. *Saenz*, 623 F.3d at 467, is particularly instructive. There, like here, the district court misrepresented the underlying facts in the case. It commented that the defendant was a "major participant" in a drug conspiracy, yet the evidence established otherwise *Id.* That error resulted in a remand for resentencing. *Id.* at 470; *see also United States v. Wilson*, 614 F.3d 219, 225-26 (6th Cir. 2010) (same); *United States v. Molnar*, 590 F.3d 912, 915-16 (8th Cir. 2010) (same and remanding where the district court imposed a significant upward variance).

Similarly, in *United States v. Durham*, 645 F.3d 883, 899-900 (7th Cir. 2011), the district court erroneously stated that the defendant had prior involvement with guns. *Id.* at 899. There, the district court focused, *inter alia*, on the defendant's:

> significant criminal history, which the judge apparently believed included the use of firearms. While the court mentioned guns only once, based on our reading

> of the transcript, we conclude that it is 'not improbable that the trial judge was influenced by improper factors in imposing sentence.' Finally, we conclude that a sentence *potentially* based on an erroneous fact affects the fairness, integrity, and public reputation of the proceeding.

*Id.* at 900 (citation omitted) (emphasis added); *see also United States v. Gear*, 418 Fed.Appx. 488, 489-90 (7th Cir. 2011) (unpublished) (remanding for a third resentencing where the judge referred to three prior incidents involving guns, where only two prior incidents actually existed).

In *United States v. Halliday*, 672 F.3d 462, 475 (7th Cir. 2012), the district court relied on the defendant's purported belief in the lawfulness of the offense and the lack of victims when imposing sentence. This was pure speculation, however, and so this Court vacated the sentence and remanded for resentencing. *Id.* This Court, and others, have vacated sentences for similar reasons as well. *See, e.g., United States v. Corona-Gonza*, 628 F.3d 336, 341-42 (7th Cir. 2010) (plain error for the district court to rely on a non-existent fact at sentencing); *United States v. Barnes*, 602 F.3d 790, 797 (7th Cir. 2010) (remanding because of district court's "incongruous" findings at sentencing); *United States v. Miller*, 601 F.3d 734, 740 (7th Cir. 2010) (remanding for resentencing because of an "absence of support in the record for the court's views"); *United States v. Castro-Juarez*, 425 F.3d 430, 435 (7th Cir. 2005) (remanding because of incorrect characterization of a prior conviction); *see also United States v. Cossey*, 632 F.3d 82, 88 (2d Cir. 2011).

"It is uncontroversial to conclude that a sentencing decision that relies on factual

findings that were unsupported in the record, and thus could not possibly have been established by a preponderance of the evidence, seriously affects the fairness, integrity, and public reputation of judicial proceedings." *Cossey*, 632 F.3d at 88. "[B]asing a substantial criminal sentence on a non-existent material fact threatens to compromise the fairness, integrity, or public reputation of the proceedings." *United States v. Gonzalez-Castillo*, 562 F.3d 80, 83 (1st Cir. 2009). After all, a district court cannot rely on "speculation or unfounded allegations," when imposing sentence. *Halliday*, 672 F.3d at 475.

That is precisely the problem here. The district court thought that the revolver was a "semiautomatic handgun," and it relied on this misrepresentation to impose a significant upward variance in this case. App. at 10, 13; SOR at 5. That is no different than the errors in the above-cited cases. For instance, if it was reversible error in *Gear* to rely on three incidents involving a gun, instead of two incidents, 418 Fed.Appx. at 489-90, it was reversible error to refer to a "semiautomatic handgun" when no such gun existed. If it was reversible error to rely on an inaccurate portrayal of the offense conduct in *Saenz*, 623 F.3d at 467, it was reversible error to do the same in this case.

Moreover, for whatever reason, the district court placed significant emphasis on Johns's children. App. at 11; SOR at 5. "This is not a picture of responsible conduct. It is a rather dark picture, frankly." App. at 11. "In his personal life he has been irresponsible

to a high degree, having fathered some eight children through six separate relationships." SOR at 5. This circumstance had an obvious affect on the district court and the imposition of a significant upward variance.

Yet, Johns only fathered seven children from five different relationships. R.41 at 6. He did so during a 14-year period. PSR at 13. He has not fathered a child in some 11 years, although he raised his fiancee's daughter as his own. *Id.* Although unclear, at least some of the children appear to have been born in wedlock. *Id.* at 12-13. And nothing in the PSR reports that Johns's children are anything but law-abiding and productive citizens. *Id.* Perhaps the district court would still label this conduct "irresponsible to a high degree." SOR at 5. But it must at least know and understand the facts before doing so.

As in *Tucker*, the sentencing court "gave explicit attention" to the erroneous information, and, therefore, the sentence was "founded at least in part upon misinformation of constitutional magnitude." *Tucker*, 404 U.S. at 444, 447. As in *Townsend*, Johns "was prejudiced by the court's own misreading of the record," and he "was sentenced on the basis of assumptions . . . which were materially untrue. Such a result, whether caused by carelessness or design, is inconsistent with due process of law, and such a conviction cannot stand." 334 U.S. at 740-41. As in *Lane*, "[t]he judge's explicit attention to the misinformation demonstrates his reliance on that

misinformation in passing sentence." 738 F.2d at 866-67.

To the extent that the district court may have considered other factors, that is irrelevant because the court "relied on inaccurate information as *part* of the basis of the sentence." *Id.* at 867. This court "cannot independently review the accurate information and conclude that the original sentence was still justified. That would be sheer speculation in reconstructing the sentencing court's thought processes." *Id.* As such, the error could not be considered harmless, and resentencing is required. *Id.*

## III. The district court's violation of Federal Rule of Criminal Procedure 32(i)(1)(A) also amounts to reversible error in this case.

At sentencing, a district court "must verify that the defendant and the defendant's attorney have read and discussed the presentence report and any addendum to the report." Fed.R.Crim.P. 32(i)(1)(A).[7] Yet, the district court never verified that Johns, or his attorney, read and discussed the PSR.

The genesis of this rule is the due process right to a fair sentencing procedure, discussed in Issue II above. *Rone*, 743 F.2d at 1171.

As this Court explained almost 30 years ago:

> the rules require a definite yet simple procedure. The district court at the sentencing hearing need directly ask the defendant only three questions-whether he or she has had an opportunity to read the report, whether the defendant and defense counsel have discussed the report and whether the defendant wishes to

[7]Prior to 2003, this rule was codified at Rule 32(c)(3)(A). Prior to 1994, it was codified at Rule 32(a)(1)(A).

challenge any facts in the report.

*Rone*, 743 F.2d at 1174. "The rules require only that the court make a record during the sentencing hearing, which reflects that the defendant has had a realistic opportunity to read and discuss the report and to raise objections." *Id.* "By placing the responsibility on the court, the amended rule should clarify the record, particularly in a case like this in which the defendant was unable to make bond and was held in custody throughout the time when the report would usually have been available." *Id.*

In *Rone*, this Court explained that this procedure provides a clear record "as to when there are allegations of factual inaccuracies," and the need to resolve the inaccuracies. *Id.* at 1175. "By following the procedures outlined in the amended rules as interpreted by this opinion, a sentencing judge will be able to eliminate gross errors and thus ensure greater accuracy and fairness in the sentencing process." *Id.* This is particularly important in cases "in which the government might have been careless with the facts and thus significantly exaggerated the extent and nature of the defendant's culpability," as well as in cases involving defendants with little criminal history and little "familiarity with the technical aspects of the legal system." *Id.* at 1176. In light of the rules violation in *Rone*, this Court vacated the sentence and remanded for resentencing. *Id.*

The same should happen here. This Court's concerns in *Rone* are manifested in the facts in this case. Johns was detained during the pendency of the district court

proceedings. R.14. He had very little criminal history, had served virtually no time in jail, and had no prior experience in federal court. PSR at 7-9. And there were factual inaccuracies within the PSR that the district court relied on to impose a longer sentence in this case. *See* Issue III above.

Moreover, the government was "careless with the facts." In its sentencing memorandum and at sentencing, it referred to facts not found in the PSR, and failed to introduce evidence in support of those facts. The government's discussion about Hunter is particularly instructive. The PSR never mentioned Hunter, yet the government later referred to him as the "WOS leader," alleged that Johns sold Hunter and Hunter's brother guns, and alleged that Johns and Hunter had discussions on the sale of crack cocaine, guns, and ammunition, and gang violence and retaliation within the gang. R.45 at 2-3, 711-12, 15; *see also* R.58 at 19.

Hunter was the President of the Midwest Region, however, not the leader of the WOS. *See supra* p.11 n.2. Nor did the government mention that the recorded conversations between Hunter and Johns took place two months *after* the last controlled buy (and more than five months after the first controlled buy). And, as far as undersigned counsel can tell, the government's description of those conversations is debatable, to say the least.

Moreover, at sentencing, the government twice alleged that Johns "sold the machine

gun and revolver out of his own residence," where he lived with his fiancee and daughter. R.58 at 17, 20. Yet, in its sentencing memorandum, it alleged that Johns sold the guns in an alley behind the house. R.45 at 5-6. And with respect to the last controlled buy, there was no allegation, let alone evidence introduced, that Johns exited his house prior to the transaction. *Id.*

There is also the government's contradictory allegations in the sentencing memorandum that Johns knew the CI was both a convicted felon and on probation, or that Johns knew the CI was a convicted felon, but it was the CI who knew that Johns was on probation. R.45 at 2-3, 10. Only the latter allegation is supported by the PSR. PSR at 5. Then there is the comment at sentencing about an order of protection, in which Johns was "identified as armed and dangerous." R.58 at 20. Apparently, this came from a "pretrial services officer." *Id.* It was not in the PSR (or anywhere else in the record).

Also interesting is the government's repeated reference to Johns's threat to murder someone, a statement he made during the first controlled buy in July 2010. R.45 at 3, 10-11, 15. If the government thought this threat sincere, why was Johns not arrested until the following July? R.8. That seems odd not to arrest an individual who "wanted to use a firearm to murder someone." R.45 at 10.

The government also stated at sentencing that Johns had "a history of disobeying court supervision as well." R.58 at 22. It is unclear where that came from. The PSR only

lists one probation violation, and the underlying conduct was this case. PSR at 9. Johns successfully completed his three previous supervisory terms. *See id.* at 8.

Then there are the statistics at sentencing. Without introducing any evidence, the government alleged that gun murders in Chicago were "up by approximately 39 percent," and that "there were more shooting deaths in the City of Chicago in 2012 than there were combat killings in Afghanistan." R.58 at 22. Those statements were made on July 31, 2012. As far as undersigned counsel can tell, the first statement is inaccurate.[8] And the second statement not only fails to take into account the population difference between Chicago and the number of troops in Afghanistan (3.8 million to 90,000), but also only includes deaths of U.S. troops (presumably).[9]

In the end, this case is analogous to *Rone*, and, as in *Rone*, the district court's violation of Rule 32(i)(a)(1) was reversible error. *See also United States v. Atkinson*, 979 F.2d 1219, 1224 (7th Cir. 1992). "It is necessary here, as with other things, that there be the appearance as well as the reality of fairness." *United States v. Sosa*, 789 F.2d 1257, 1264 (7th Cir. 1986).

---

[8] http://articles.chicagotribune.com/2012-08-02/news/chi-july-homicides-drop-but-yearsofar-tally-up-20120801_1_homicides-drop-three-homicides-harrison-district (Homicides were up 26% at that time, and, for the month of July, they were actually down 11%).

[9] http://www.motherjones.com/mojo/2012/08/no-chicago-not-more-dangerous-afghanistan

## IV. The district court's explanation for the 160-month sentence was not sufficiently compelling to support the significant upward variance.

When a district court imposes a sentence outside the applicable Guidelines range, as the district court did in this case, it must provide an adequate explanation in order to allow for meaningful appellate review and to promote the perception of fair sentencing. *Gall*, 552 U.S. 50. If the district court varies upward, it "must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." *Id.* It is "uncontroversial that a major departure should be supported by a more significant justification than a minor one." *Id.*

One reason for this requirement is that substantial upward variances risk "creating unwarranted sentencing disparities, in violation of 18 U.S.C. § 3553(a)(6), for most other judges will give sentences closer to the norm." *United States v. Kirkpatrick*, 589 F.3d 414, 415 (7th Cir. 2009). And so, an upward variance "is more likely to be reasonable if it is based on factors sufficiently particularized to the individual circumstances of the case rather than factors common to offenders with like crimes." *Aljabari*, 626 F.3d at 952; *see also United States v. Omole*, 523 F.3d 691, 698 (7th Cir. 2008) ("we are wary of divergent sentences based on characteristics that are common to similarly situated offenders.").

Moreover, the better gage is the extent of the upward variance in relative terms, rather than absolute terms. *United States v. Castillo*, 695 F.3d 672, 673 (7th Cir. 2012). In other words, the analysis focuses more properly on "the sentencing judge's percentage

deviation from the guidelines range," rather than the actual deviation in months or years. *Id.* at 674. This is so because the Sentencing Commission's "knowledge of penology exceeds that of most judges," and "a judge who imposes a sentence far above the top or far below the bottom of that range is challenging the Commission's penal judgment." *Id.* at 673.

The ultimate sentence imposed in this case was 160 months' imprisonment. App. at 2. The Guidelines recommended (incorrectly) a sentence between 97 and 121 months' imprisonment. PSR at 16. Thus, the 160-month sentence represents a 32% upward variance from the highest end of the (incorrect) Guidelines range.[10] From the correct Guidelines range (63 to 78 months' imprisonment), *see* Issue I *supra*, the 160-month sentence represents a 106% upward variance from the highest end.[11]

Even "a 30% increase is large in relative terms." *Castillo*, 695 F.3d at 673. Indeed, this Court just referred to such an increase as a "substantial variance." *Id.* In *Castillo*, the increase was justified because the Guideline at issue did not account for the substantial number of false documents at issue in that case. *Id.* at 674-75. Moreover, in *Castillo*, the appellate attorney filed an *Anders* brief because there was no valid ground to challenge the sentence. *Id.* at 673. This Court agreed and dismissed the appeal. *Id.* at 675. This case

---

[10]From the lowest end of the range, the sentence represents a 65% upward variance.

[11]From the lowest end of the range, the sentence represents a 255% upward variance.

is nothing like that case.

First, as explained above, the district court's initial reason for the upward variance was based on inaccurate information. *Supra* Issue II. The district court mistakenly thought that Johns sold a semiautomatic handgun. App. at 10; SOR at 5. He did not. That is reversible error by itself. But beyond that, the district court found Johns's conduct represented a "grave, extreme and present active danger to communities . . . all over this country." In doing so, the district court never acknowledged that Johns sold the firearms to a confidential informant, who then turned the guns over to law enforcement. This is a relevant difference. *United States v. Bradley*, 675 F.3d 1021, 1027 (7th Cir. 2012) (*Bradley II*) (noting that cases involving sting operations are materially different than cases involving actual victims).

Moreover, when a district court relies on magnified consequences to impose a significant upward variance, there must be support in the record for its assertions. *United States v. Bradley*, 628 F.3d 394, 399 (7th Cir. 2010) (*Bradley I*). Here, the district court noted that the sale of guns to gang members for profit is a grave danger to the community. Fair enough. Yet, the district court itself cited nothing in the record on this score, and the only mention of the seriousness of the offense came from the government, who cited inaccurate statistics. *See* Issue III *supra*, p. 46-47 n.8, 9. Such statistics should trouble this Court. *See, e.g., Palka v. City of Chicago*, 662 F.3d 428, 435

(7th Cir. 2011) ("the statistical evidence is worthless. It is simply a series of numbers without any context"); *Fox v. Hayes*, 600 F.3d 819, 835 (7th Cir. 2010) (discrediting a statistic "unmoored from the fact of this case").

The district court then noted that Johns was on probation when he committed the offense conduct in this case. App. at 10. Yet, it did not acknowledge that this fact increased Johns's criminal history category from a I to a II. PSR at 9. Without this increase, Johns's (incorrect) Guidelines range would have been 87 to 108 months' imprisonment (the correct range would have been 57 to 71 months' imprisonment). This Court is rightfully skeptical when sentencing courts rely on facts already factored into the properly calculated Guidelines range to impose significant upward variances. *Bradley II*, 675 F.3d at 1026; *Omole*, 523 F.3d at 698 ("we are wary of divergent sentences based on characteristics that are common to similarly situated offenders."). And here, there was nothing about Johns's probationary status that distinguished him for others who commit crimes on probation. The government's assertion that he had "a history of disobeying court supervision" was simply incorrect. R.58 at 22; PSR at 8-9.

The district court's third point below was actually in Johns's favor: "[t]he Court takes into consideration the fact that the defendant grew up in a rough neighborhood with gangs and violence around him and that his childhood was difficult." App. at 10-11. In *Bradley II*, the district court in that case made similar references to the defendant's

history and characteristics, yet still imposed a significant upward variance. 675 F.3d at 1028. This Court found it "puzzling from the record how 'the § 3553(a) factors, *on a whole*, justif[ied] the extent of the variance.'" *Id.* The significant upward variance in this case is similarly puzzling.

The district court's next reason for the significant upward variance is also troubling. The district court commented on Johns's children, calling his decision to father eight children from six different women "irresponsible to a high degree" and "a rather dark picture." SOR at 5; App. at 11. The comments were inaccurate, as discussed above. *Supra* Issue II. But beyond that, it is questionable whether this type of information should ever be used to support a significant upward variance.

Recently, this Court labeled similar comments "unfortunate." *United States v. Patrick*, 707 F.3d 815, 817-18 (7th Cir. 2013). The defendant in that case asserted that the district court erred when it commented, "[t]welve kids by 10 different women. I mean, my God, how can you even satisfy 10 different women? I can't even satisfy my wife." *Id.* at 818. This Court did not address the issue, however, because it vacated the sentence for a different reason. *Id.* at 817; *see also United States v. Coke*, 404 F.3d 836, 846, 849 (2d Cir. 1968) (noting that the court would have vacated the sentence in a prior appeal, if challenged, where the judge stated, *inter alia*, "[y]ou have been shiftless, indifferent to responsibilities, you have fathered children by three different women. Most of those

children, if not all of them, have been on welfare for years.”).

The comments in this case go beyond those in *Patrick*. They also ignore the fact that Johns has not fathered a child in some 11 years, that at least a few of his five children appear to have been born in wedlock, that all are law-abiding citizens that share a good relationship with Johns, and that Johns comes from a large family himself. PSR at 12-13. Moreover, the district court failed to acknowledge that, according to the Guidelines, “family ties and responsibilities are not ordinarily relevant in determining whether a departure may be warranted.” USSG § 5H1.6.

But more importantly, “[s]entencing is an occasion for decorous and solemn reflection. A judge imposing sentence represents the sovereignty of the United States. Although he may impress the defendant with the gravity of the criminal law and the seriousness of the offense, he should make every effort to suppress his idiosyncrasies.” *United States v. Lopez*, 974 F.2d 50, 52 (7th Cir. 1992). This is not China. The right to procreate is “fundamental to the very existence and survival of the race.” *Skinner v. Oklahoma*, 316 U.S. 535, 541 (1942). Johns’s decision to procreate more times than the district court apparently would have liked is not a sound basis for a significant upward variance in this case.

The district court’s next reason to vary upward was the defendant’s age and its apparent effect on recidivism in this case. App. at 11. The district court found that,

because Johns was older (41 at the time of the offense), he should not have committed the crimes. *Id.* And because he committed the crimes, the district court found "a significant danger of recidivism in this particular case." *Id.* In other words, the district court found that an older defendant, like Johns, is more likely to recidivate because he committed a crime at an older age.

The district court cited nothing to support its views on recidivism. Nor did the government, which made a similar argument, but for a Guidelines range sentence (not an upward variance) R.45 at 15; R.58 at 20. This is problematic. In *Miller*, this court vacated an above-Guidelines-range sentence because that sentence was based on unsupported views on rates of recidivism. 601 F.3d at 739-40. "[N]either party presented evidence that supported the district court's views about recidivism and deterrence of sex offenders, nor did the court provide any support for them." *Id.* And, the district court's comments in that case were possibly contrary to studies previously cited by this Court. *Id.*

Similarly, in *Bradley I*, this Court actually vacated a sentence on due process grounds because that sentence was based on speculation about the defendant's potential for recidivism. 628 F.3d at 401. This Court rejected the government's argument that this speculation should not upset the sentence because the district court addressed the § 3553(a) factors, noting, "the evaluation of those factors was flawed from the inception

because the court's assessment of the very first factor . . . rests on speculation rather than evidence bearing 'sufficient indicia of reliability.'" *Id.*

The district court's reliance on recidivism rates in this case is just as speculative as it was in *Miller* and *Bradley I*. Neither the district court nor the government provided evidentiary support for the proposition that a 41-year-old with minimal criminal history (he was a criminal history category II), who commits the instant offense, would be more likely to engage in criminal activity after his release from imprisonment.

Indeed, the statistics show otherwise. Recidivism rates increase with each criminal history category. USSC, *Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines* at Exhs. 2, 3 (2004). Those that fall in criminal history category II, like Johns, are less likely to recidivate than those in more serious criminal history categories. *Id.* As the Sentencing Commission concluded, "offenders with minimal prior criminal history . . . have substantially lower recidivism rates [and] are considered less culpable under the guidelines." *Id.* at 15.

Moreover, contrary to the district court's assertions in this case, "[r]ecidivism rates decline relatively consistently as age increases. Generally, the younger the offender, the more likely the offender recidivates." *Id.* at 12. This Court has recognized the point. *United States v. Johnson*, 685 F.3d 660, 661 (7th Cir. 2012). "There is both an aging effect and a selection effect: the cost of acquiring criminal skills increases with age, and career

criminals, who already possess such skills, are likely to retire from crime before reaching old age because repeated crimes bring increasingly heavy sentences." *Id.*

The issue in *Johnson* was whether the district court should have *varied downward* because of the defendant's old age. *Id.* at 661. The appellate attorney in that case moved to withdraw, and this Court granted the motion in a published opinion. This Court rejected as frivolous any argument that a *downward variance* would have been proper, noting, "by engaging in criminal activity at such an age provides evidence that he may be one of the few oldsters who will continue to engage in criminal activity until they drop. This may well be the case of our defendant, as the district judge explained in a thoughtful sentencing statement." *Id.* at 662.

*Johnson* was decided three weeks before Johns was sentenced. Perhaps it was on the district court's mind (and the prosecutor's). If so, it was taken out of context. *Johnson*'s statements stand for the unexceptional proposition that a district court need not vary downward simply because a criminal defendant is elderly. It should not be read to encourage *significant upward variances* simply because an individual is older when he commits a crime. That would make little sense in light of the statistics cited above (and in *Johnson* itself).

Indeed, the Guidelines themselves recognize that age may be a reason to "depart downward in a case in which the defendant is elderly," but there is no discussion of an

upward departure for that same reason. USSG § 5H1.1. And, when age and criminal history are combined, individuals, like Johns, who are 41 to 50 years old and fall in a criminal history category of II recidivate only 13% of the time, a rate much lower than almost all others. *Measuring Recidivism* at Exh.9. It is true that "anything that increases the risk of recidivism argues for a longer sentence." *United States v. Moreland*, 703 F.3d 976, 989 (7th Cir. 2012). But the district court below imposed a longer sentence based purely on a speculative risk of recidivism. That is improper. *Bradley I*, 628 F.3d at 401; *Miller*, 601 F.3d at 739-40.

Prior to the imposition of the 160-month sentence, the district court gave no other reasons for its imposition. But afterward, the district court further noted Johns's statement to the CI that he "was retaining a weapon for use in the commission of revenge for a murder of a gang member; the fact that the defendant knew that the guns were being given to people who were not entitled to them and were being resold at a profit; the violent nature of the people to whom he sold these guns and the activities they were involved in . . . ." App. at 13; *see also* SOR at 5. These factors went to "the need to protect the public." *Id.*

The district court never acknowledged that Johns made the first statement to the CI during the first controlled buy in July 2010. PSR at 5. He was not arrested until July 2011. He was obviously under surveillance during much of this time, yet there are no

allegations that he killed anyone or even attempted to do so. Indeed, if the government actually thought that he intended to kill someone, why would they not arrest him earlier? They certainly could have done so.

The second factor cited by the district court was taken into account by the Guidelines. In fact, because of the incorrect manner in which the Guidelines were calculated, Johns ultimately received an 8-level enhancement because he transferred the guns to an individual who intended to transfer the guns to others for profit. That 8-level enhancement increased his Guidelines range from 41 to 51 months to 97 to 121 months' imprisonment. It is difficult to imagine that this factor could further justify an upward variance in the case. *Bradley II*, 675 F.3d at 1026; *Omole*, 523 F.3d at 698.

That leaves "the violent nature of the people to whom he sold these guns and the activities they were involved in." App. at 13. Of course, Johns only sold three guns to the CI, and the CI turned the guns over to law enforcement. *See* PSR at 5. But regardless, a 30% upward variance for this reason, and a number of impermissible ones, cannot withstand appellate review.

In the Statement of Reasons, the district court also checked six Guidelines provisions: (1) USSG § 5K2.0; (2) USSG § 5K2.6; (3) USSG § 5K2.14; (4) USSG § 5K2.17; (5) USSG § 5K2.18; and (6) USSG § 5K2.20. The first is just the general departure provision. The second concerns the use or possession of a weapon in the commission of

the offense, but Johns's Guidelines range was already enhanced because of the number and nature of the weapons, PSR at 6-7, so it is unclear exactly how this provision would warrant an additional upward variance, *see United States v. Leahy*, 169 F.3d 433, 443 (7th Cir. 1999). The same is true with the fourth Guideline, USSG § 5K2.17, which concerns semiautomatic firearms. That fact increased Johns's base offense level from 12 to 20. USSG § 2K2.1(a)(4)(B), (a)(7). The district court gave no reason as to why an 8-level enhancement was insufficient on this ground.[12]

The third Guideline, USSG § 5K2.14, concerns a significant endangerment of "national security, public health, or safety." But Johns sold three guns to a confidential informant. He did not, for instance, engage in a shooting spree in public areas, *United States v. Taylor*, 701 F.3d 1166, 1175 (7th Cir. 2012). Nor did the district court give any explanation as to how Johns significantly endangered national security or the public's health. The fifth Guideline, USSG § 5K2.18, only applies if the defendant "is subject to an enhanced sentence under 18 U.S.C. § 521," and so it is inapplicable in this case. And the sixth Guideline, USSG § 5K2.20, allows for a *downward departure*, not an *upward departure*, for aberrant behavior.

The district court's citation to these various Guidelines is especially odd considering that the probation officer found no reason to depart or vary upward based on the facts

[12]Indeed, the citations to these Guidelines arguably demonstrate, once again, the district court's improper reliance on its belief that the revolver was a "semiautomatic handgun."

and circumstances of this case. PSR at 17-18. Nor did the government. R.45 at 13-16. Nor did the district court give any indication that the imposition of consecutive sentences in this case was at odds with USSG § 5G1.2(d).

Finally, the district court's explanation of the sentence said nothing about unwarranted disparities. True, Johns said nothing of unwarranted disparities either. But the government did (emphatically). *Id.* It cited § 3553(a)(6) and recommended a within-range sentence to avoid unwarranted disparities. *Id.* at 13-14. The 160-month sentence was a 30% upward variance from the Guidelines range. It is longer than 13 of the 19 sentences imposed in the WOS RICO conspiracy out of St. Louis, Missouri, discussed by the government below. Case. No. 4:11-cr-00246-CDP (E.D. Mo.). Indeed, Allan Hunter only received a 102-month sentence. This too is problematic. *See United States v. Panice*, 598 F.3d 426, 442-444 (7th Cir. 2010) ("a 360–month sentence seems out of line with the sentences imposed on other defendants convicted of similar conduct.").

In the end, the district court's explanation for a significant upward variance in this case suffers a number of infirmities. As a whole, as discussed above, the district court's explanation fails to justify the extent of the significant upward variance in this case. *Bradley II*, 675 F.3d at 1028. A remand for resentencing is necessary for this reason as well.

## V. Assuming no error by itself requires remand for resentencing, the cumulative error doctrine nonetheless necessitates a remand for resentencing.

The cumulative error doctrine is rooted in the Due Process Clause. *United States v. Allen*, 269 F.3d 842, 847 (7th Cir. 2001). To demonstrate cumulative error, a defendant must establish that: (1) at least two errors were committed; and (2) those errors, considered together, affected the outcome of the proceedings. *Id.*

The doctrine is applied to trial errors. But the Supreme Court has also applied it in the sentencing context. *Cone v. Bell*, 556 U.S. 449, 476 (2009) (vacating and remanding because the lower courts failed to assess the cumulative effect of suppressed evidence on the defendant's sentence). As have other Courts of Appeals. *See Lockett v. Trammel*, 711 F.3d 1218, 1245 (10th Cir. 2013); *United States v. Runyon*, 707 F.3d 475, 520 (4th Cir. 2013); *United States v. Jimenez-Laines*, 354 Fed.Appx. 889, 895-96 (5th Cir. 2011) (unpublished).

Both prongs are met in this case. As explained above, the sentencing hearing was laced with errors. There was a Guidelines miscalculation, reliance on inaccurate facts, a rules violation, and a failure to explain a significant upward variance. And those errors certainly had an affect on the outcome of the sentencing proceedings. The district court imposed a significant upward variance even though nobody recommended a sentence above the Guidelines range (not probation, not the government, not Johns).

This is not the first time numerous errors have infected a sentencing hearing. *See,*

*e.g., United States v. Higdon*, 531 F.3d 561, 563-65 (7th Cir. 2008). When it happens, this Court remands for resentencing. *Id.*; *see also Kirkpatrick*, 589 F.3d at 415 ("when a sentence appears to be chosen arbitrarily, it is problematic."). After all, "the judge must articulate reasons that assure us that the sentencing process is a reasoned one." *Omole*, 523 F.3d at 699. With so many procedural errors, the sentencing process in this case was anything but a reasoned one. Accordingly, this Court should vacate the sentence and remand for resentencing.

## CONCLUSION

For the foregoing reasons, this Court should vacate the sentence and remand for resentencing.

Respectfully submitted,

JONATHAN E. HAWLEY
Chief Federal Public Defender

By: s/ Daniel T. Hansmeier
DANIEL T. HANSMEIER
Staff Attorney/Branch Deputy

Attorneys for Defendant-Appellant,
CURTIS JOHNS

**CERTIFICATE OF COMPLIANCE WITH FED.R.APP.P. 32(a)(7)(C)**

The undersigned certifies that this brief complies with the volume limitations of Federal Rule of Appellate Procedure 32(a)(7)(C) and Circuit Rule 32 in that it contains 13,929 words and 1110 lines of text as shown by Word Perfect X6 used in preparing this brief.

s/ Daniel T. Hansmeier
DANIEL T. HANSMEIER
Staff Attorney/Branch Deputy

Dated: May 16, 2013

No. 12-3525

---

UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

---

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

vs.

CURTIS JOHNS,
Defendant-Appellant.

---

Appeal From the United States District Court
For the Northern District of Illinois, Eastern Division
Case No. 1:11-cr-00468-1
The Honorable Judge Ronald A. Guzman

---

REQUIRED SHORT APPENDIX OF
DEFENDANT-APPELLANT, CURTIS JOHNS

---

FEDERAL PUBLIC DEFENDER
CENTRAL DISTRICT OF ILLINOIS
600 E. Adams Street, 2nd Floor
Springfield, Illinois 62701
Telephone: (217) 492-5070
Fax: (217) 492-5077
Email: daniel_hansmeier@fd.org

JONATHAN E. HAWLEY
Chief Federal Public Defender

DANIEL T. HANSMEIER
Staff Attorney/Branch Deputy

Attorneys for Defendant-Appellant,
CURTIS JOHNS

## CERTIFICATE OF COMPLIANCE WITH CIRCUIT RULE 30

The undersigned counsel for Defendant-Appellant, hereby states that all of the materials required by Circuit Rule 30(a) and 30(b) are included in the Appendix to this brief.

s/ Daniel T. Hansmeier
DANIEL T. HANSMEIER
Staff Attorney/Branch Deputy

Date: May 16, 2013

**APPENDIX TABLE OF CONTENTS**

Certification. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

Judgment in Criminal Case. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1-6

Excerpts from Sentencing Transcript. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7-14

No. 12-3525

IN THE
UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff-Appellee,<br><br>vs.<br><br>CURTIS JOHNS,<br><br>Defendant-Appellant. | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division<br><br>Case No. 1:11-cr-00468-1<br><br>Hon. Ronald A. Guzman, United States District Judge, Presiding. |

**NOTICE OF FILING AND PROOF OF SERVICE**

TO: Mr. Gino Agnello, Clerk, United States Court of Appeals, 219 S. Dearborn St., Chicago, IL 60604

Mr. Curtis Johns, Reg. No. 43726-424, FMC Rochester, P.O. Box 4000, Rochester, MN 55903

Ms. Jessica Romero, Office of the U.S. Attorney, 219 S. Dearborn Street, Suite 500, Chicago, IL 60604

I hereby certify that on May 16, 2013, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system. I further certify that some of the participants in the case are not CM/ECF users. I have mailed the foregoing document by First-Class Mail, postage prepaid, or have dispatched it to a third-party commercial carrier for delivery within 3 calendar days to all non-CM/ECF participants.

s/ Daniel T. Hansmeier

DANIEL T. HANSMEIER
Staff Attorney/Branch Deputy
Office of the Federal Public Defender
600 E. Adams St., 2nd Floor
Springfield, Illinois 62701
Phone: (217) 492-5070
E-Mail: daniel_hansmeier@fd.org